J. Bertram Wegman, J.
This article 78 proceeding to review respondent’s revocation of petitioner’s restaurant liquor license was brought on by order to show cause returnable September 30, 1968, and argued on that date, after which hearings were held by the court on October 1 and October 7,1968. Because the statutorily limited duration of the stay of enforcement of the order of revocation granted by the court was to expire on October 12, 1968, the court’s decision that the revocation of petitioner’s liquor license must be set aside and annulled, as arbitrary and capricious, was announced without pausing for the writing of the court’s opinion in the premises; announcement and implementation of the court’s decision could not be deferred to await the availability to the court of time and means for the writing of the court’s opinion without exposing petitioner to the untoward consequences of expiration of the stay before entry of the order of remand; in the memorandum of decision it was stated that the opinion of the court would be filed thereafter.
Under date of May 21, 1968, the State Liquor Authority served notice on the petitioner to appear on May 28, 1968 to plead to four specified charges in proceedings thus instituted to revoke petitioner’s license. Thereafter, petitioner appeared by counsel and entered its plea of-not guilty to the charges. The respondent served notice of a hearing to be held on June 10, but when petitioner’s counsel appeared on that date, he found that without any prior notification to him respondent had adjourned the hearing until June 24. (Respondent had sent a telegram to petitioner notifying petitioner of the adjournment, but omitted entirely to inform petitioner’s counsel thereof.) Petitioner’s counsel then advised respondent that he was required to be engaged elsewhere on June 24 and asked for a change of the adjourned date to June 27 or July 2 or July 3. On June 21 respondent sent a telegram to petitioner’s counsel stating that the hearing was adjourned from June 24 to July 2. As sent to Western Union by respondent, the time specified for the hearing on July 2 was 10:00 a.m. As transmitted by Western Union to petitioner’s counsel, the time appeared in the telegram as “ 1 Pam [sic] ”.
When the petitioner did not appear at 10:00 a.m. on July 2, counsel for the State Liquor Authority attempted to reach petitioner’s president by telephone; when he was unsuccessful in locating petitioner’s president, he then telephoned petitioner’s counsel.
*219 It may be noted, in passing, that it seems peculiar and scarcely defensible, to say the least, that respondent apparently pays no heed whatsoever to the plain and generally recognized rule that when a party appears by counsel, all communications must be addressed to counsel rather than to the party directly (cf. CPLE 2103; Canons of Professional Ethics, canon No. 9). It would seem almost that respondent being required so to do by statute grudgingly tolerates appearance by counsel but despite such appearance unhesitatingly by-passes counsel.
There is a sharp conflict between the testimony of respondent’s assistant counsel who reached petitioner’s counsel on the telephone, on the morning of July 2, and the testimony of petitioner’s counsel. On behalf of respondent, it is asserted that petitioner’s counsel told respondent’s representative that he would not appear forthwith for the hearing and that respondent could proceed “to do as he pleased”. Petitioner’s counsel states that he said that he could not appear forthwith but would appear at 1:00 p.m., and was told that the matter could not be heard at 1:00 p.m., whereupon he asked that it be adjourned to another date, pointing out that he had been ready to go ahead on June 10 when respondent, without notice, had adjourned the hearing, and therefore he felt that another adjournment would not be too much to request under the circumstances.
This court is satisfied that petitioner’s counsel testified truthfully and to the best of his recollection. The court is satisfied also that respondent’s assistant counsel attempted as best he could under the circumstances to testify truthfully but that, as he acknowledged, he was without any recollection as to material points of inquiry; his recollection as to the details of his conversation with petitioner’s counsel may not have been entirely clear.
One thing, however, is clear and that is that thereafter petitioner’s counsel, emphasizing petitioner’s desire to be heard, made a written request for a hearing and that on July 11, the respondent’s official in charge acknowledged receipt of this request and promised that it would be submitted to the members of the State Liquor Authority.
It plainly cannot be that respondent’s refusal to set a new date for hearing was because the respondent regarded the case as one requiring expeditious disposition which did not allow any time to be wasted on a hearing. Although on July 10, 1968, in asking that the so-called default, which was taken on July 2, be opened, petitioner’s counsel wrote, ‘ ‘ The default was not wilful or deliberate and request is respectfully made for an opportunity to defend the charges ’ ’, and on July 11 it was said *220 that that request was being submitted to the members of the Authority, it was not until September 9 that the respondent displayed haste by sending petitioner’s counsel a telegram stating “ License revoked. Formal notice to follow.” The formal notice which did follow asserted that the respondent at a meeting held on September 6, 1968, had sustained all of the charges and had ordered the license revoked effective September 13, 1968.
It is difficult to imagine how respondent’s conduct in this regard could be thought not to be high-handed, hence arbitrary and capricious, — but that is not all that .seems to this court to display dereliction in respondent’s attitudes:
The petitioner set forth as part of its moving papers facts demonstrative of a lack of merit in each and all of the four charges made by the respondent and held by the respondent to justify revocation of the license. Without going into unnecessary detail, suffice it to say that on the uncontroverted evidence set forth by petitioner, not a single one of these charges should properly have been found sustainable. The peculiar manner in which the respondent chose to treat the issue of the merits of its charges beggars understanding.
The rules of the State Liquor Authority (promulgated by the respondent itself and amended by the respondent from time to time) at all times provided very specifically in subdivision 10 of rule 2, which relates to revocation hearings, under the heading of ‘ ‘ Notice of Hearing ’ ’, that ‘1 Such notices shall be deemed to have been duly served if sent by registered or certified mail to the licensee addressed to the licensed premises and a copy thereof by ordinary mail to the residence of the licensee or to the residence of any officer of a corporate licensee,” and, further, that “ Notices of hearing shall be mailed at least five days prior to the date set forth in said notice for the holding of said hearing unless the Authority, in its discretion, shall shorten the time fixed herein ”. Yet the notice of the hearing in this case when petitioner’s default was quickly taken which, as received by counsel for the petitioner, set forth a wrong time for the hearing, which was sent out on June 21,11 days before the hearing date, was sent only by Western Union telegram and there was not so much as even a confirmation by mail. According to the testimony adduced in this case by respondent, no notice is ever sent by mail in any case; all notices are by Western Union telegram, obviously at much greater expense to the State, and no attempt is ever made to verify the accuracy of transmission.
The failure of the petitioner to appear at an earlier hour than *221 that specified in the telegram, was held by respondent to constitute a waiver of the hearing and the decision to revoke was made on the basis of that putative default.
The minutes of the so-called hearing on the morning of July 2, attended by neither petitioner nor its counsel, recite on their face the appearance of counsel for the petitioner.
Petitioner submitted cogent evidence disproving and negating each and all of the charges made by respondent. Typical is charge No. 2 alleging that petitioner refused to testify under oath at an inquiry held by the respondent on February 28, 1968 with respect to the matters bearing on the conduct of the licensed premises, etc., etc.; petitioner showed that its principal officer was called to respondent’s offices on that date and then and there informed respondent’s investigator that petitioner’s counsel had suffered and was confined to his bed by a heart attack. Petitioner asked that the interview be adjourned until petitioner’s counsel was able to appear, or until petitioner could retain other counsel; respondent’s investigator refused the request for adjournment. He demanded that petitioner’s principal answer questions in disregard and in spite of petitioner’s principal’s statement that he did not regard it as proper for him to answer such questions in the absence of his counsel. Respondent charges that this attitude amounts to sufficient cause for revoking petitioner’s license.
At the so-called hearing, the minutes of which were submitted to the court, it appears that the only testimony taken was from respondent’s investigator Allegro. The minutes show that after identifying himself, Allegro was asked whether he had made an investigation and had submitted a report. Without more, something he identified as his report was marked in evidence, but nothing whatsoever indicating the nature or relating to the contents of that report is contained in the minutes. At the first hearing before this court, counsel for the respondent was asked by the court to submit a copy of that exhibit so that the court might be informed as to the evidence considered by respondent on the merits of the charges. Counsel for the respondent refused to submit a copy of that exhibit to the court, saying that it was not within the court’s province to see what the respondent had considered. Respondent took the position that the only question before the court was whether respondent should have opened the default and that the court had no power or jurisdiction under the pertinent statute to review that question. Accorded an opportunity by the court to reconsider its position that the power of the respondent to decide whether to take or *222 to open a default was absolute and not reviewable by the court, which, under the circumstances of this case, the court regarded as untenable, when the hearing resumed after the recess from October 2 to October 7, counsel for the respondent reiterated its refusal to submit the exhibit for the court’s perusal. Hence it is by respondent’s deliberate choice, after ample time for reconsideration, that the record is barren of any dispute or contravention of petitioner’s proof that the charges sustained by respondent were baseless and devoid of any merit whatsoever.
In my view, the pertinent statutes clearly empower and authorize this court to review a determination by respondent revoking a license when there is proffered no evidentiary support for the findings upon which the revocation is said to be based, even where the withholding of supporting evidence is said to be unchallengeable because petitioner failed to appear at the time purportedly set for a hearing, and a fortiori when, as here, dubiety abounds in the manner in which notice is claimed to have been given of the time of hearing. In any event, if ever and at all the absence or insufficiency of proof of guilt may not be questioned, that would only be when the default was clearly willful and deliberate, and surely that is not the case here. But even were there room for argument whether review by this court has been authorized by statute in a case such as at bar, this court, whose jurisdiction is supreme in the sense that it is constitutionally unlimited and illimitable, must of necessity be held to have the power to redress a clear invasion of constitutional rights, privileges and immunities. Under the facts and circumstances at bar this case presents a clear need to vindicate petitioner’s constitutional rights to due process of law and to the equal protection of the laws. There is neither excuse nor need to hesitate to condemn respondent’s self-arrogation of power to destroy petitioner’s lawfully conducted business without evidence of petitioner’s guilt. Respondent’s power to execute an economic death sentence is not so bald and bold as to be immune from question in this court.
One final point is noteworthy from the standpoint of respect for fundamental fairness in the administration of the law. The petition here alleges that petitioner has always operated its restaurant business in accordance with law and with respondent’s rules and regulations, without any violations of law of any kind or nature. It is, to put it mildly, rather startling to find that respondent which has attempted to destroy this lawfully operated business does not deny these allegations. Respondent, amazingly, denies only that it has knowledge or information suf *223 ficient to form a belief as to the truth of petitioner’s allegations in that regard.
These, then, are the considerations which led to the decision heretofore announced annulling and setting aside the revocation of petitioner’s license.